J-S04042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PETER A. HISSIM | : | |
| | : | |
| Appellant | : | No. 1464 EDA 2016 |

Appeal from the Judgment of Sentence February 5, 2016
In the Court of Common Pleas of Northampton County
Criminal Division at No(s):  CP-48-CR-0000181-2015

BEFORE:  SHOGAN, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED February 27, 2017**

Appellant Peter Hissim appeals the judgment of sentence entered by the Court of Common Pleas of Northampton County after Appellant was convicted of Driving Under the Influence (DUI) and related summary offenses.  Appellant claims the trial court erred in denying his suppression motion and raises a weight of the evidence claim.  We affirm.

On November 1, 2014, Sergeant John Harmon, a twenty-one year veteran of the Colonial Regional Police Department, was on a roving DUI patrol in Bath, Pennsylvania.  At approximately 2:02 a.m., Sergeant Harmon observed a black Chevrolet Silverado traveling westbound on West Main Street at an "extremely" high rate of speed.  Notes of Testimony (N.T.),

---

[*] Former Justice specially assigned to the Superior Court.

1/13/15, at 5. Sergeant Harmon made this determination based on the fact that he needed to travel in excess of 70 to 80 miles-per-hour to catch up to the Silverado on a road where the posted speed limit was 35 miles-per-hour. Sergeant Harmon also observed the vehicle cross the center lane of travel.

Continuing to follow the truck as it turned onto Race Street, Sergeant Harmon initiated a traffic stop as the vehicle approached East Allen Township. Upon identifying the driver as Appellant, Sergeant Harmon noted a strong odor of alcohol coming from the vehicle, observed Appellant's eyes were glassy and bloodshot, and deemed his behavior to be "combative." After Appellant submitted to field sobriety testing, Sergeant Harmon noted Appellant showed signs of impairment and arrested him for suspicion of DUI. Subsequent blood tests revealed Appellant's blood alcohol level was 0.13%.

Appellant was charged with DUI (high rate of alcohol), DUI (general impairment: incapable of safely driving), failure to drive at a safe speed, failure to drive on roadways laned for traffic, and careless driving.[1] Appellant filed a suppression motion claiming Sergeant Harmon did not have the requisite suspicion to stop his vehicle. The trial court denied this suppression motion. On January 8, 2016, the trial court convicted Appellant of both DUI counts, failure to drive at a safe speed, and failure to drive on roadways laned for traffic, but acquitted him of careless driving.

_____

[1] 75 Pa.C.S. §§ 3802(b), 3802(a), 3361, 3309(1), and 3714(a).

On February 5, 2016, the trial court sentenced Appellant to a period of thirty days to six months imprisonment as this was Appellant's second DUI conviction. On February 16, 2016, Appellant filed a post-sentence motion, which the trial court subsequently denied.[2] Appellant filed a timely notice of appeal and complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises two issues for our review on appeal:

1. Whether there was insufficient probable cause to stop [Appellant] when Officer Harmon did not follow [Appellant] for three-tenths of a mile?

2. Whether [Appellant's] conviction for DUI, General Impairment, was against the weight of the evidence when the Commonwealth did not prove [Appellant] was substantially impaired?

Appellant's Brief, at 5.

Appellant first claims the trial court erred in denying his suppression motion, asserting that Sergeant Harmon lacked the probable cause needed to initiate the traffic stop of his vehicle for speeding. Specifically, Appellant claims that the investigative stop was unjustified as Sergeant Harmon was required to follow Appellant for three-tenths of a mile to clock his speed

---

[2] Generally, "a written post-sentence motion shall be filed no later than 10 days after imposition of sentence." Pa.R.Crim.P. 720(A)(1). Appellant's post-sentence motion was due on Monday, February 15, 2016, on which President's Day was celebrated. Court holidays are omitted from the calculation of a period of time when the holiday is the last day of the requisite period. *See* 1 Pa.C.S. § 1908. As a result, Appellant's post-sentence motion was timely filed on Tuesday, February 16, 2016.

using his speedometer. We review a trial court's denial of a suppression motion under the following standard:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Johnson*, 146 A.3d 1271, 1273 (Pa.Super. 2016) (citation omitted).

With respect to vehicle stops based on suspected violations of the motor vehicle code, Section 6308(b) of the Vehicle Code provides:

> **(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

In **Commonwealth v. Feczko**, 10 A.3d 1285 (Pa.Super. 2010), this court further explained the state of the law with respect to vehicle stops:

> Traffic stops based on a reasonable suspicion[,] either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b)[,] must serve a stated investigatory purpose. [**Commonwealth v.**] **Chase**, 960 A.2d [108,] 116 [(Pa. 2008)].
>
> Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, "it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.*" [**Commonwealth v.**] **Gleason**, 785 A.2d [983,] 989 [(Pa. 2001)].

*Id*. at 1291. In other words, "[w]here a vehicle stop has no investigatory purpose, the police officer must have probable cause to support it." **Commonwealth v. Enick**, 70 A.3d 843, 846 (Pa.Super. 2013), *appeal denied,* 624 Pa. 671, 85 A.3d 482 (2014). Consistent with **Fezcko**, this Court has held that a police officer must possess probable cause to stop a vehicle for a speeding violation because nothing more can be determined regarding the violation once the vehicle is stopped. **Commonwealth v. Salter**, 121 A.3d 987, 993 (Pa.Super. 2015).

Our Supreme Court has defined probable cause as follows:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the [stop], and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a

*probability,* and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Martin*, 101 A.3d 706, 721 (Pa. 2014) (citation omitted).

Section 3361 of the Motor Vehicle Code sets forth the offense of "Driving vehicle at safe speed" as follows:

**§ 3361. Driving vehicle at safe speed**

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when *approaching and crossing an intersection* or railroad grade crossing, when approaching and going around curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S.A. § 3361 (emphasis added).

In *Commonwealth v. Heberling*, 678 A.2d 794, 797 (Pa.Super. 1996), this Court upheld a defendant's conviction under Section 3361 based on the arresting officer's observation that the defendant was traveling "at an extreme rate of speed" in a 45 mile-per-hour zone as the defendant was approaching an intersection and the crest of a hill. The officer in *Heberling* did not measure the defendant's exact speed before stopping his vehicle. We have consistently emphasized that "Section 3361 does not require that a

specific speed limit must be exceeded in order for a violation to occur."
***Commonwealth v. Martorano***, 563 A.2d 1229, 1233 (Pa.Super. 1989).

In this case, Sergeant Harmon observed Appellant traveling at an "extremely" high rate of speed down West Main Street as Appellant's truck approached and turned at the intersection at Race Street. Sergeant Harmon was able to determine that Appellant was travelling at a speed well beyond the posted thirty-five miles per hour speed limit as Sergeant Harmon had to pursue Appellant at speeds in excess of 70 to 80 miles-per-hour to catch up to his vehicle. Sergeant Harmon also observed the vehicle cross the center lane of travel. We find that Sergeant Harmon had probable cause to stop Appellant for violating Section 3361 and conclude that the trial court did not err in denying Appellant's suppression motion.[3]

Appellant also claims his conviction for DUI (general impairment: incapable of safely driving) was against the weight of the evidence. When reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The essence of appellate review for a weight claim appears to lie
> in ensuring that the trial court's decision has record support.

---

[3] In denying Appellant's suppression motion, the trial court found the investigative stop was justified by reasonable suspicion that Appellant had violated the Vehicle Code. "[I]t is well settled that where the result is correct, an appellate court may affirm a lower court's decision on any ground without regard to the ground relied upon by the lower court itself." ***Commonwealth v. Derrickson***, 923 A.2d 466, 469 (Pa.Super. 2007).

> Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Mucci*, 43 A.3d 399, 410–11 (Pa.Super. 2016),

(quoting *Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1054–55

(2013).

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Clay*, 619 Pa. at 433, 64 A.3d at 1055.

DUI under Subsection 3802(a)(1) is defined as follows:

(a) *General impairment.*

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1) (italics in original).

Specifically, Appellant claims that his conviction for DUI (general impairment) cannot stand as he did not drive erratically and his medical condition of Bell's Palsy caused Sergeant Harmon to believe he was intoxicated. The trial court rejected these claims, reasoning as follows:

> The evidence also clearly [shows] that [Appellant] was incapable of safely operating the vehicle because of intoxication. Officer Harmon testified that the Appellant was driving the vehicle in excess of 70 miles per hour and detected a strong odor of alcohol coming from Appellant's vehicle, observed that the Appellant did have glassy, bloodshot eyes, and testified as to the Appellant's agitated and combative behavior during the traffic stop. The Officer also conducted field sobriety tests, all of which indicated Appellant's intoxication. In the "One Leg Stand" test, [Appellant] exhibited three of the four intoxication indicators, swaying during the entire test, raising his arms for balance and putting his foot down several times during the test. During the "Walk and Turn" [test,] he exhibited six intoxication indicators, not keeping his balance, starting the test too soon, did not step heel to toe, showed excessive distance between his feet, stepped off the line and raised his arms for balance. Lastly, on the "Finger to Nose" test[,] the Appellant missed touching his nose on two of the four attempts, failed to follow instructions and was swaying during the administration of the test. Based on these indicators, Officer Harmon concluded that the Appellant showed significant signs of impairment and placed him under arrest.

> Additionally, the Officer indicated that he instructed the Appellant to notify him if he felt insecure or physically unable to perform any of the tests, prior to the test. Although the Officer was informed that the Appellant had a medical condition, Bell's Palsy, the Appellant never indicated that his condition, or any other difficulty, prevented him from performing any of the field

- 9 -

sobriety tests. Therefore, based on the evidence presented to this Court at the time of trial, we concluded that the Commonwealth met its burden of proving beyond a reasonable doubt that [Appellant] was guilty of Driving Under the Influence of Alcohol, General Impairment.

Trial Court Opinion, 6/5/16, at 4-5. There is support in the record for the trial court's ruling in which the law was properly applied, and we discern no partiality, prejudice, bias or ill-will. **See Clay**, **supra**. Accordingly, Appellant's weight claim also fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/27/2017