COMMONWEALTH of Pennsylvania,
Appellant

v.

Matthew B. PETERSON, Appellee.

Superior Court of Pennsylvania.

Argued Feb. 15, 2011.

Filed March 17, 2011.

Cynthia A. Gilkey, Assistant District Attorney, Mercer, for Commonwealth, appellant.

Daniel W. Davis, Public Defender, Mercer, for appellee.

BEFORE: BOWES, DONOHUE, and SHOGAN, JJ.

OPINION BY BOWES, J.:

The Commonwealth appeals from an order entered May 5, 2010 in which the trial court suppressed a small amount of marijuana and drug paraphernalia.[1] We affirm.

The salient facts of this case are as follows. Appellee and six other males were standing at the corner of Morrison Street and South Oakland Avenue after midnight in a high crime area in Sharon, Pennsylvania. Officer Michael Albanese, Jr. of the City of Sharon Police Department approached slowly in a marked cruiser and six of the individuals fled. Appellee remained behind and did not run. Officer Albanese originally believed that Appellee may have been the victim of a crime and asked Appellee if he had been robbed. Appellee responded in the negative. At this point, the officer questioned Appellee as to why the other individuals ran from the scene and Appellee stated that he did not know. Officer Albanese continued to question Appellee, this time about a bag that Appellee was carrying. Appellee informed him that it contained some tools and showed the contents of the bag to the officer. The officer then asked Appellee for his name. Appellee responded that it was none of the officer's business. Rather than end the encounter, Officer Albanese exited his vehicle and informed Appellee that he was investigating and ordered Appellee to provide his name. Appellee complied, and the officer learned that Appellee

---

1. In its notice of appeal, the Commonwealth certified that the order in question would terminate or substantially handicap its prosecution of Appellee. Hence, we have jurisdiction over this appeal. *See Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985); Pa.R.A.P. 311(d).

had an outstanding warrant for driving under a suspended license. Officer Albanese then placed Appellee under arrest and performed a search incident to arrest. That search uncovered a small amount of marijuana contained within a plastic baggie, which was the basis for the paraphernalia charge.

Appellee filed a suppression motion alleging that he was illegally detained without reasonable suspicion and that the evidence that was seized was a direct result of the illegal detention. The suppression court agreed, concluding that the officer had not articulated reasonable suspicion for the investigative detention and that the search incident to arrest flowed directly from information learned during that unlawful interdiction. Thereafter, the Commonwealth appealed, and the suppression court directed the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth complied and the suppression court filed a Pa.R.A.P. 1925(a) order indicating that the reasons for its decision could be found in its findings of fact and conclusions of law filed with its order granting Appellee's suppression motion. The Commonwealth now raises two issues on appeal.

> Did the officer have sufficient reasonable suspicion to justify his detention of the defendant?
>
> Is the defendant entitled to suppression of contraband seized from his person following his arrest on an outstanding arrest warrant?

Commonwealth's brief at 4.

■ Our standard of review when evaluating a suppression order is well settled:

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980). Where the defendant prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 842 (2003) (citations omitted). However, where the appeal of the determination of the suppression court turns on allegations of legal error, "the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879, 881 (1998).

*Commonwealth v. Moyer*, 954 A.2d 659, 663 (Pa.Super.2008).

■ The Commonwealth initially contends that the suppression court erred in finding that the officer did not have reasonable suspicion to stop and question Appellee. According to the Commonwealth, the unprovoked flight of the six other individuals combined with the time of day, 12:30 a.m., and the high crime area provided the officer with reasonable suspicion that Appellee was engaged in criminal activity. In support of its position, the Commonwealth references case law discussing the flight of persons who were stopped and questioned, not an individual who did not flee. However, the Commonwealth submits that although Appellee did not flee, that did not "impact the officer's ability to

investigate the suspected criminal activity." Commonwealth's brief at 8.

The Commonwealth fails to provide any argument whatsoever as to what suspected criminal activity Appellee was engaged in when he did not take flight from the officer. Nor has the Commonwealth indicated what is suspicious about a person not running from police, or how other individuals fleeing the approach of a police officer makes the person who does not flee likely engaged in criminal activity. Indeed, Officer Albanese admittedly did not suspect Appellee was involved in criminal activity, but believed Appellee was the victim of a crime. While the officer may have had reasonable suspicion to detain the individuals who fled, the fact that a person did not take flight cannot give rise to reasonable suspicion that he is engaged in illegal conduct. Hence, the Commonwealth's first issue must fail.

■ The Commonwealth's second claim is that the defendant was not entitled to suppression of his identity and since he was lawfully arrested on an outstanding arrest warrant, the drug paraphernalia and drugs were lawfully obtained pursuant to a search incident to arrest. The Commonwealth relies upon *Commonwealth v. Howard*, 442 Pa.Super. 337, 659 A.2d 1018 (1995) and *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972), for the proposition that Appellee's identity is not the proper subject of suppression.

In *Howard*, the defendant matched the description of a person involved in two robberies. Police stopped him and asked his name, which he provided. However, he did not have any identification to verify his name. Accordingly, the police transported him to the police station, fingerprinted him, and released him. As a result of the fingerprinting, the defendant's actual identity was learned and the police created a photographic lineup for the victims of the robbery. Each of the victims identified the defendant.

The trial court suppressed the fingerprint results, the photographic array shown to one of the victims, and that victim's corresponding out-of-court identification. However, it permitted the in-court identifications as well as physical evidence seized from the defendant after his arrest. The defendant appealed, and this Court concluded that the photograph of the defendant and the photographic array were admissible because the photographs were in the possession of police prior to the unlawful detention. We also determined that evidence seized as the result of his lawful arrest was properly permitted into evidence since it was not the product of his unlawful detention.

*Garvin* also involved a robbery. In that case, police unlawfully arrested the defendant three weeks after a robbery. The arresting officer immediately transported the defendant to the scene of the robbery where he was identified by one of the victims. Our Supreme Court concluded that the unlawful arrest "merely provided the means for the confrontation with [the victim] more promptly than would otherwise have been the case." *Garvin, supra* at 38. It then held that the illegality of the arrest did not contribute to the witnesses' knowledge or the accuracy of their identifications.

*Howard* and *Garvin* bear almost no factual similarities to the instant case. Herein, there was no intervening point between Appellee's unlawful detention, the supplying of his name, and the subsequent arrest and search. Nor is the present matter one involving identification by other witnesses. Our recent decision in *Commonwealth v. Hudson*, 995 A.2d 1253 (Pa.Super.2010), is factually similar and supports the suppression court's findings. In that case, a police

officer in a marked cruiser witnessed the defendant standing on a corner exchanging cell phone numbers with another individual. After observing the officer, the two men proceeded inside a grocery store. Subsequently, the officer drove by the location a second and third time. The second time, the officer saw the defendant with a second individual, and both men again entered the grocery store. The third time, the officer observed the defendant with a different person. He then parked his vehicle beside the two men and asked to speak with them. The officer requested identification, which the men provided. The defendant had an outstanding warrant, and the officer placed him under arrest. Incident to that arrest, the officer found a large amount of crack cocaine, marijuana, and money on the defendant. This Court ruled that since the officer had no reasonable suspicion to stop the defendant, the evidence found on the defendant's person should have been suppressed.

Instantly, the officer stopped Appellee without reasonable suspicion and, after learning his name, arrested him on an outstanding warrant and searched him incident to that arrest. He then uncovered the evidence at issue. Since the interdiction leading directly to the discovery of Appellee's name was not supported by reasonable suspicion, under the holding of *Hudson,* the suppression court properly ruled in favor of Appellee.

Order affirmed.